On behalf of the people, Mr. Scott Jacobson, on behalf of the Apple League, Ms. Megan Merkles. Good morning, Your Honor. Scott Jacobson from the Illinois State's Attorney's Appellate Prosecutor on behalf of the people. Good morning. Your Honor, the facts of this case are relatively straightforward and simple. That's because what occurred in the trial court was a stipulation entered into between the parties about an employee from the Savannah Thompson State Bank who was stealing funds from the bank, depositing those funds in her checking account. And at some point in the subsequent investigation, after the defendant was charged, the Carroll County Sheriff's Department called up the Savannah Thompson State Bank, asking them for that employee's banking records with the bank. I'm sorry, you said after she was arrested when this happened? Yes, Your Honor. On page 25 of the record, I believe Carroll County State's Attorney Scott Brinkmeyer refers to this evidence as additional discovery that was tendered after the defendant was already charged, I believe. No, no, no. When did they get the information? Not when did they tender it? Oh, this was the, I do not believe it is specifically a record, but Mr. Brinkmeyer refers to this as additional discovery and says that he just received it on that particular day. This is in the third hearing after the, of, I believe it's page 25 of the record, after Ms. Nesbitt had already been charged, after there had already been a few hearings, a few status hearings in the case, and after the defendant waived preliminary hearing in the matter. So, is it your position then that the information from the bank to the officer in question was given to him after there was a full investigation and charges pending? Absolutely, Your Honor. Yes. There are facts outside of the record to support that information. How about the record, facts inside the record? The facts inside the record, unfortunately, are limited solely to the Carroll County State's attorney's comments on the record, referring to these, referring to the approximately 250 pages of records as additional discovery that he had received that day, or that he, I believe, I believe he calls it information that he had just received. That doesn't necessarily mean when he asked for it. It just means when he received it. That's true, Your Honor, but there is, you could give it that interpretation, the interpretation that I would give it, which ultimately, because I know more than what's in the record, the fair interpretation that I would give it is... But counsel, respectfully, it's what's in the record. Yes, Your Honor. We cannot look beyond the record, so... Absolutely. What I'm saying, though, is that it's certainly suggestive of the truth of the matter. I agree that there are certainly multiple interpretations that you could read into it, but the fact that, you know, the Carroll County State's attorney on the record is saying, I just received this information and I'm tendering it as additional discovery in this matter, would certainly betrust the inference that this is not the only piece of evidence out there connecting the defendant to the crime. Moreover, the fact that this is the third hearing in the case, would lead one to believe in a criminal matter that the defendant had already been charged in the case and that the police had already had investigatory information that would bring the defendant before a court of law. So, you're saying that there's, since this is additional discovery, there must be other information the state had. Absolutely. And was that sufficient to convict? Was it sufficient to convict? I, well, in my opinion, I mean, given who I work for and what I do, absolutely I'm going to say yes. Well, if it is, then why should we entertain this appeal if your prosecution isn't in jeopardy? Respectfully, Your Honor, I'm not quite sure. Maybe if you could draw that out for me a little bit more, I'm not quite sure where you get that. Well, isn't this an interlocutory appeal and don't you have to certify that this substantially affects the prosecution? That is true, Your Honor, yes. So, substantially to you means something other than you lose. I see what you mean. Well, Your Honor, the roughly 250 pages of records about the defendant's bank account records as held at the Savannah Thompson State Bank, I mean, this is a theft case involving a large sum of money. I would argue that in order to prove up that sum of money, you need documentary evidence apart from the testimony of, say, witnesses or other people that might allege that the defendant, you know, at some point committed a theft or confessed to committing a theft or whatever the other evidence might show in the case. But you have to prove at least, you know, what was taken or how much was taken. And so in that sense, I think a crucial element of the case is, well, how much was taken? And that's precisely what I believe these documentary records show. I have not had the benefit of looking at them myself, Your Honor. And I don't believe Judge Gutterson had the benefit of looking at them either. And that's not really what his ruling is addressing. So the motion to suppress only suppressed this bank information on the accounts? That is correct, Your Honor. There's other evidence that you believe would at least pass muster insofar as the motion for a direct defining would be concerned? As an officer of the court, I can tell you, yes, that's the case. But, I mean, you know, I'm not necessarily asking the court to take judicial notice of something like that. I mean, that would obviously be beyond the purview of this appeal or even, you know, the question of whether or not the people's case was substantially impaired. I think solely the issue before this court is whether or not Judge Gutterson and the court below correctly applied the case of People v. Jackson. And whether or not, as the defendant now contends, what is before this court and what the limitations of Jackson are and what this court must do necessarily is compelled by Jackson or Cabales or this court's prior ruling in the layer. I think the defendant maybe framed the issue correctly in one sentence and in another sentence framed the issue incorrectly. In the defendant's brief on page 2, the defendant suggests that in order to find for the people in this case, this honorable court must overturn Cabales, the First District's decision in Jackson, and this court's decision in People v. Dallaire. Respectfully, the people disagree. First, Cabales being a Supreme Court case. Cabales was a Supreme Court case. Yes, Your Honor. So we couldn't do it even if we could. No, you certainly could not. And I don't believe the Supreme Court would take favorably to that approach. Secondly, Your Honors, Jackson, which will really be the substance of the people's argument, is a First District case. And as we all know, this was part of the people's motion to cite additional authority. As we all know, the way stare decisis works in the state of Illinois is that the decisions of sister districts, while they are to be afforded some consideration, are not necessarily binding on the trial courts and circuit courts of other districts. Finally, the decision, this court's decision in People v. Dallaire, was confined solely to the issue of mud records, of multiple usage directory records. And in that sense, Your Honors, this court's decision in Dallaire isn't really implicated by anything that this court will do in this case. So respectfully, the issue is about whether or not the First District's decision in Jackson correctly applies to this case and what this court must do, whether it decides to follow Jackson and apply Jackson to this case or whether it doesn't, and where things go from there. So with respect to Jackson, as we all know, Jackson and the First District opinions in Jackson, Jackson adopted the minority view, Justice Brennan's dissent in United States v. Miller. Miller said that citizens in the United States of America under the federal Constitution don't have a privacy interest in their bank records because of the third-party nature of bank records, because of a whole host of reasons going back to, you know, generally just the fact that, you know, banks are financial institutions that they're designed to keep, you know, all of us financially secure in society. But Jackson really doesn't apply to the facts of this case, apart from being derivative entirely of Justice Brennan's dissent, and there is some historical irony there. More importantly, though, Your Honors, I believe Jackson is incompatible with the lockstep approach that the Supreme Court adopted in Cabalas. Now, Jackson is cited in Cabalas, and the defendant does make a good point about that. But is Jackson truly cited in Cabalas? In Cabalas, Justice Garvin's opinion really truly, really truly? No, Your Honor. Really truly no? I mean, Justice Garvin's opinion in Cabalas for the court speaks at length about multiple situations in which our state courts and the state appellate courts, the state Supreme Court, have declined to follow the United States Supreme Court in different directions, adopting greater protections for the citizens of Illinois based solely on the state constitution. And if the Illinois Supreme Court wanted to adopt Jackson, it could have given the thorough analysis that it gave Jackson, or that it gave all these other decisions, roughly a dozen other decisions, in the first 20 pages of the Cabalas opinion. But it doesn't do that. In fact, all Justice Garvin's opinion does is say that our analysis must begin with the Will County Grand Jury case, and then 10 pages later say that the Will County Grand Jury case approvingly cites Jackson. A citation within a citation within a citation is not approval of a case or of its holding. It simply remarks on the fact that Will County Grand Jury parenthetically talks about Jackson and leaves undecided the question of whether or not our Supreme Court adopts the holding in Jackson. So Jackson, to be quite honest. But it didn't say, I mean, inciting Jackson and the line down didn't say we don't agree. No, that's true, Your Honor. If you'll indulge me, I'll just say that it's on, I believe, on the official citation is page 330 in Cabalas. It says, the privacy clause is also implicated in the courts of criminal investigation if the state seeks access to medical and financial records that are within the scope of the protections of Article I, Section 6. See, for example, Will County Grand Jury. Citing with approval people be Jackson. And then in parentheses it says, Article I, Section 6 assures citizens a right of privacy in their bank records. Now, the first 20 pages of the Cabalas opinion are about cases in which there were sound reasons for the Illinois Supreme Court to depart from federal precedence and adopt broader state protections for specific rights about, say, greater rights in front of the Grand Jury or of, you know, disparities in capital sentencing hearings and the way capital sentencing hearings were conducted for Illinois citizens versus the way they were conducted in federal courts as, you know, during the limited period of time in which the federal courts applied the death penalty. Justice Garland's opinion is full of analysis on a lot of issues. It's not full of any analysis on Jackson. So to say that it picks up Jackson or that it holds the propositions in Jackson up and cites them with any real authority or any real analysis or any approval is simply misstating the issue. But if they cite Will County, Grand Jury, for the proposition that the Illinois Constitution exceeds the federal constitution's privacy guarantees, why then does there have to be additional analysis? It's already been established. That's true, Your Honor. What I'm saying is that Jackson's merely an example of that. That's not to say that the analysis of Jackson is sound or that Jackson rests on any firm premise that if Jackson were to suddenly be overturned, then the state constitution of Illinois would cease to afford broader protections than the federal constitution. No, because we could go back to Will County, which is a state supreme court decision. Right, or we could go back to any of the other 20 cases that Justice Garland talks about. I mean, the proposition is still there. The state constitution affords greater protections. But the real question in this case is, does Jackson apply? Is Jackson good law? Is Jackson law that's consistent with the lockstep approach? And respectfully, Your Honor, I have to answer the question that in Cabalas, our supreme court passed upon that question. They haven't answered it with any real authority or any real analysis. So you're basically saying whatever our disposition is should be an opinion because we will be making precedent relative to the fact that you don't believe Jackson is precedent. That's correct, Your Honor. I think the question, to put it, to phrase it as gently as I can, the question narrowly presented to this court is whether this court believes Jackson is still good law, whether Cabalas truly adopted Jackson, and whether the premises that Jackson rests on are sound. No, I don't think that we can say whether it's good law or bad law. If it's a supreme court decision, we have to follow it. So I think it would be better for you to argue that we have to decide whether it applies because if we determine it doesn't apply, then we don't have to consider the merits of it in applying it to this case. But to say that it applies but we should determine that it's bad law, that won't happen. We may criticize it and say maybe the Supreme Court should revisit this. And if we were really valorous and willing to, you know, do battle with the Supreme Court, we might certify the question. He might do that. But we don't have the authority to do what you're suggesting. Well, Your Honor, respectfully, I don't think, I mean, I believe that you do. Because if you look at Cabalas and you look at the one lonely instance in which Cabalas cites to the fact that Will County cited to the fact that cites to Jackson with approval, they're not really adopting Jackson. Well, I guess the one alone, they don't have to put it in bold letters. It's in the decision. It doesn't need to be further distinguished, does it? Do you have authority that says just mentioning it isn't sufficient? Or is that your argument here today? That would be my argument today, Your Honor. All right. So it's an argument that you're hoping to garner some support for in authority from us? It would be an argument that I would like this court certainly to consider. And in the motion to cite additional authority, the case that I presented to this court, which was a second district case, the second one, is Schramer v. Tiger Athletic Association of Aurora. It was a subpoena in that case, wasn't it? No, Your Honor. That was the first case. The other one? That was the first case, yeah. All right. The first case which has devoured the mobile oil is a civil case where there's an employee at a bank and he and his wife have an account. And the question is whether that account is discoverable under the Illinois Banking Act, which is probably what I should be spending more time talking about as opposed to this issue, which I believe Justice Jorgenson would like me to do. But the Schramer case very briefly talks about how star excises works in Illinois and about how- I think we'll grant you that. But if you want to discuss the- Okay. Fair enough, Your Honor. We'll give you a couple minutes to- Thank you, Your Honor. That's all right. To briefly talk then about the protections of the Illinois Banking Act and about how they apply in this particular case. The state is not of the opinion that the Illinois Banking Act necessarily controls the issue before this court. And I believe that's what Judge Gunnarson's opinion was more concerned with, whether or not his hand was forced by the Illinois Banking Act. And respectfully, I would suggest that it's not, but it's instructive of what this court and Judge Gunnarson should have ruled in this case. The Illinois Banking Act negotiates liability between the bank and the account holder, the depositor. It's, I mean, black letter law that statutes should attempt to be read in harmony. And in that sense, when the Banking Act, you know, advises banks that they have a responsibility to turn over- that they have a responsibility to turn over records to authorities in the situation where the bank believes it's been the victim of fraud, that certainly would seem to suggest that the bank was complying with its responsibilities. Can you point to anything in the record that would establish that the bank believed it was a victim of a crime at the time that the records were given? Short of the fact that the defendant was already charged with the crime. Anything in the record that would show that that's why the bank acted? Beyond the stipulation itself. Anything in the record? Stipulated, not stipulated? Testimony, not testimony? I would point then to the cover page of the record and the fact that it's people v. Carol Nesbitt at this point. The fact that the defendant has been charged with a crime by information or complaint. But at the time they tendered the record, not in retrospect, but at the time that the bank tendered the records, did they do so with the belief that they were a victim of a crime? I can say yes they did because there was a pending case. Is there anything in the record that shows that? That as opposed to this being some preliminary investigation or gee this might be and a police officer walks into the bank and says we'd like to look at these records and they go okay here you go. Well that's precisely my point your honor is that the officer says to the bank we would like you to turn over these records that an employee of the bank has committed fraud against you or has committed theft against you. I mean that's the stipulation. So is it the behest of the police officer not based on the belief of the bank that they were a victim? At the point at which the defendant has already been arrested for theft and charged with a crime that is correct your honor. But again not to belabor the point but you're bootstrapping that based on a statement made by a prosecutor at the time he tenders the discovery to defense. I'm basing that solely on the cover page of the record and the fact that she was already charged with a crime. Respectfully that's not bootstrapping that's looking at the first page of the record. No because it tells you when that statement to me unless you can point to something else tells me that that's when the state received the information the state's attorney to be clear received the information and is tendering it to counsel. That does not tell me when the police officer got the information whether that was before or after an investigation had begun. It doesn't tell me whether Ms. Nesbitt was arrested. That's why I keep saying you can point to anything in the record that pinpoints the time frame. Well honestly then my answer respectfully would be no I cannot. But I would also suggest that that would lead me to believe that perhaps the trial court might have jumped the gun in this situation as well. And that the trial court should have said well there is no other independent fact out there that would lead me to believe. Or that I don't have enough information in front of me that I can make an authoritative ruling on this issue. I mean what extraneous facts are out there. So that maybe you know whether whether the parties proceeded by stipulation or not maybe the trial court had insufficient facts to make the ruling that it did. Was such a broad sweeping ruling adopting precedents like Jackson and importing it into the context of this case. Based on the limited facts it had before. I could be wrong. I'd have to read the statute very carefully. But I thought the statute said something in fact that if a bank turns information over based upon its belief that it is a victim of a crime. That is appropriate. What I'm not clear on is whether or not it's supposed to be an act that is initiated by the mental machinations of the bank. Or whether it's by a request or demand by the state. And so if it's if we are to measure this by whether this is in response to a request by the state regardless of what the bank thought. Does it then come within the purview of the act. Or does it have to be if the bank thinks it's a victim of a crime. It makes no difference whether there's a request or it's an independent act on its own volition. But I think that's an excellent point your honor. The act itself I can tell you definitively does not state what the procedures would be for disclosure. Who has to approach who or you know what the circumstances are. All the act does state under section B8 and section B12 are it permits the bank to turn over records to the police when it reasonably believes it has been the victim of fraud. And so in this situation what Judge Gunderson said was well I don't know whether the bank reasonably believed it was the victim of fraud and therefore I'm suppressing it. And what I'm saying is if this court sees as I do a paucity of evidence in the record to support the proposition of whether or not the bank's belief was reasonable. Then the trial court had no business issuing such a sweeping ruling on the issue. Then why did the state's attorney stipulate? Where is there authority that the trial court should advocate for one party or the other? Well I don't think the trial court has a duty to advocate. I do believe that the trial court has a duty to once issues are presented to the trial court. If an issue is unclear then the trial court feels is ultimately determinative on it on the issue. I mean I think all of us are of a mind here that the question is what did the bank reasonably believe? What were the facts that gave rise to the reasonableness of the belief that the bank held? It's more in my mind a question of the timing. And that is not established by the stipulation. The stipulation is a very broad open ending. Sure. This is what happened. Well if there is an issue it should have been much more specific. And the judge shouldn't have to say well counsel is that it? Because that's not the court's job. Respectfully Your Honor I believe all of you have been in the trial court setting though. And when parties make arguments before you or say things to you and toss ideas at you and then sit down and say okay that's it. There is always the natural tendency to go wait isn't there something more here? Isn't there the end of the sentence? Where is the predicate? Where is what follows? And in this case what I'm saying is that Judge Gunnarsson launched into a 12 page ruling. Well it wasn't a launch he took some time to do it. Well I agree with you and I think that there was some I certainly think that there was some I think animus behind what he was doing. I think there was some inadequacy behind the stipulation. Is it your point that this was defendant's motion there weren't enough facts there? Motion should have been denied? That's true. Is that the bottom line? I think that's certainly one way of looking at it. But I also think it's incumbent I also believe that it's incumbent on a trial court on an issue of such great magnitude when we're dealing with constitutional rights and what are the state's abilities to encroach on whether or not a privacy right exists in the material to be seized or the material to be suppressed. I think the time is up. Thank you. Good morning. May it please the court. My name is Megan Burris and I'm here on behalf of the defendant Carol Nesbitt. Can you pull that down just a bit so we can hear you? Sure. Thank you. The state has gone to great lengths to try to insert facts that are not part of the record. The facts of this case are very limited. There was a stipulation presented to the trial court which was found on the record at page 41. Basically what happened is the government went to the bank, obtained the defendant's bank records without consent, without a warrant, without a subpoena, and that's under Illinois law is a violation of her privacy rights. The state is also arguing that a decision on this case is going to create a broad change in Illinois law, and that's just certainly not the case. People v. Cabelas cited People v. Jackson. And it's not just a cite. It's not just thrown out there. People v. Cabelas went through a very lengthy discussion on the lockstep doctrine, the limited lockstep doctrine in Illinois, and went through a very analysis of when Illinois courts should rule in lockstep with the federal cases under the Fourth Amendment and then went and discussed when the courts should not rule in lockstep with the federal cases. And the court analyzed that the Illinois Constitution, when it was changed in 1970, inserted the clause of invasion of privacy. And therefore, since the 1970 Constitution, there's been a line of cases which have analyzed what constitutes an invasion of privacy. People v. Jackson is the case that is cited for the proposition that there is a privacy interest in bank records. That case has been cited in May 1991 Will County Grand Jury, approvingly. They cited that. That's a Supreme Court decision. And then, again, in People v. Cabelas. The fact that Cabelas didn't go into any greater discussion on People v. Jackson is simply it involved a dog sniff test, and that didn't really fall into a bank records analysis. So while the court was going through an analysis on the invasion of privacy, it mentions People v. Jackson for the proposition that Illinois courts protect bank records. So there is going to be no ground shift in the law of Illinois if the court continues to follow what the Supreme Court has stated, that bank records enjoy the right to privacy. Do you think the Bank Act has any effect here? No. The state has argued at trial that it was reasonable for an officer to rely on the Illinois Banking Act. First of all, there's nothing in the stipulation that says any officer was relying on the Banking Act. But putting that aside, the Banking Act is a civil act which provides regulations for a bank. It provides when and when they cannot disclose certain types of information and financial records. And it is completely unreasonable for the government to state that somehow the Illinois Banking Act would allow them to obtain bank records of a defendant without consent, without a warrant, without any sort of legal process. How does a violation of the Bank Act by the bank implicate any constitutional rights? Well, Your Honor, it would be the violation of the Banking Act. It would be, I guess, if the Banking Act was applied in this situation, then my client would argue that it was unconstitutional because it was an invasion of her right to privacy and her bank records. But doesn't a constitutional right have to relate to state action? And that's what you have here is state action. So if the bank did this on its own volition rather than at the request of the state, how would that constitute state action? It would constitute state action because... It's a state bank. Well, the stipulation in the case is that the police officer's request of Savannah Thompson State Bank information relative to Ms. Nesbitt and then was provided that information. Your Honor, if you're analyzing it simply as these are the business records of the bank, they have the right to disclose these business records, I do not agree with that analysis. These records are much more than business records of a bank. They contain pretty much a biography of a person's life. The point I'm trying to make is if a private individual went into your house and searched your house and found contraband and took it to the police, how would you be able to suppress that evidence? Well, the next step is when the police act, then continue the search. And this isn't a fact that the bank simply called the police up and said, hey, we believe we have an employee here that is stealing. And then the police went out and obtained a search warrant and then searched and got the records. This is a fact of it's not just the information that we believe someone is taking money. It's actually the information and the financial records and the deposit slips, the canceled checks, that are then part of the case. Would it make a difference if the police had called the bank and said, you know, just to let you know, we think one of your employees has been embezzling money? And they then go, who? Give them a name. And the bank then begins to look at all of its own records, employees, non-employees, customers, non-customers, and says, here you go. Here's all the records with that person's name on it. Is that state action or is that simply the bank saying, you've now told me that you think I'm the victim of a crime. I, bank, agree with that. And here you go. That would be a violation. Because? Because it's the right to privacy in the bank records. It's still a violation. It's not, they're obtained without any legal process. Right. I appreciate that. But the bank, under the Banking Act, can give those records to law enforcement if they believe they're the victim of crime. They can provide information and then there's a section of the Banking Act. What's information? My reading of that Act does not limit what the information is. I mean, it doesn't say, I can give you her name. It says I can give you information. And it's under the guise, respectfully, it's under the guise of because the bank thinks it's a victim of a crime, it would make sense to me then that you could give to law enforcement everything that would be consistent with that. Show me your different reading. Well, Your Honor, I think the statutory construction is when the legislature uses two different words, they use information and then they use information and financial records, that that is, that they had, that that's two different things, that there's information about a person's banking, that there's something fishy going on here, versus here are the actual records. Here's the bank deposit slips, the cancel checks. Okay. My question to you is if the bank does that on its own, perhaps your client has a civil suit against the bank, but the State has not participated in the gathering of that information. It just receives what the bank brings to it as opposed to the State or the police initiating the request for the information, or, which is why I kept asking counsel, when did this all happen? And, Your Honor, there's nothing, I'll answer the first question on the State action is, if that had happened in this case, if there was anything in the record that would support that that was the fact, it would still be a violation of her constitutional rights. If the police or if the State or the bank. But the bank would have violated her constitutional rights. Is that your point? Yes, and there would be a violation of that. If the Illinois Banking Act was read to allow such a disclosure by a bank, then the Illinois Banking Act would be unconstitutional, in my opinion, because it would be so broad to basically allow a person's privacy interests to be invaded. But the second part of your question about where the record went or how are these records exchanged, there's nothing in the record. The State has taken an exchange where Mr. Merz, the attorney that argued this at the trial court, states that he received the records on January of 2009. The charge was filed in August. I think Your Honors understand that when you receive discovery through the process, and that simple statement in the record does not mean that that's when the records were provided to the State. There's nothing in the record that supports the government's argument that this was somehow provided to the police after the charges were filed. Even, let's say it was, it would still be unreasonable that the police officers were demanding these records without a warrant, without consent, without a subpoena at that time. It's not reasonable for an officer, while an investigation is pending, to be able to go into a bank and demand someone's financial records. The courts have stated that the bank records are private, of a highly private nature, and therefore the government's argument, in my opinion, fails. It was unreasonable. But if there is an ongoing investigation, and this is, I think, one of the things that the State is trying to accomplish with this, we just received these today, although maybe there should have been a subpoena or there should have been a search warrant, isn't it likely that they would have been discovered through search warrant or subpoena anyway? Well, I believe that that's the government's argument at the appellate level that the ineligible discovery doctrine should be applied. And first of all, that was not argued at the trial court. So under the Supreme Court cases, that argument has been waived. But even if that, then they're trying to argue that there was some independent investigation ongoing and therefore that these records wouldn't have been discovered, there's nothing in the record that supports that there was any independent investigation. The only evidence, you know, I think Judge Gunnarson actually said, so you're telling me the police officers went to the bank and said, give me the records and they were handed them, and that's what the stipulation amounts to. And, you know, the government's trying to argue that if you decide, if you affirm the trial court's decision that there will be some ground shift in the law in Illinois, and that's simply not the case. The facts are that these records were obtained without a subpoena. All the cases that have been discussing about the bank records, all of them dealt with a grand jury subpoena, a subpoena ducis tecum. There was absolutely no legal process or oversight in this case. And that's, you know, what makes it so unreasonable. So, you know, with Judge Gunnarson at the trial court, I think the case that is very on point is A.G. Edwards versus the Secretary of State. And in that case, the Department of Security was doing an investigation on A.G. Edwards' salespeople and tried to subpoena some banking information, banking records, that were held jointly with the salesperson's spouses. And the court in that case found that, first of all, there's a right to privacy in bank records, and second, said that even through a subpoena, it was unreasonable for the Department of Security to try to obtain this information. So, you know, there is a long string of cases in Illinois which find that, first of all, bank records are private. They enjoy protection under the right to privacy. That has been found by several Supreme Court cases. While there's nothing, you know, while the courts were not directly discussing the confidentiality or privacy nature of bank records, they cited provingly, and that does hold some weight. And the court under stare decisis should continue applying that string of cases and find that bank records enjoy a right to privacy in Illinois. Second of all, it was unreasonable in this case for the police to obtain the records as they did. There was no consent, no search warrant, no subpoena. It was unreasonable to rely on a civil Illinois Banking Act, which provides civil penalties against a bank to try to obtain those records. People v. Jackson actually, at the end of that case, has a statement, and it's for the plaintiff, against the plaintiff. But in that case, they actually state that the Illinois Banking Act should not attempt to regulate governmental intrusion into a customer's confidential bank records. And I think it applies both ways, that you can't, the government can't somehow say, oh, we can do this because of the Illinois Banking Act. And if that interpretation is applied, it would be a violation of the rights to privacy. And then finally, the inevitable discovery doctrine should not apply. There's actually no evidence that an independent investigation was ongoing. Independent investigation has to, first of all, be happening and be in progress at the same time. And there's nothing in the record to support that. So with that, I would respectfully request that this court uphold the trial court's grant of the motion to suppress in this case. Thank you. Thank you. Thank you. Your Honor, taking Justice Jorgensen's suggestion, I went back and consulted the record. I want to point you to the initial part of the record that I consulted, which is page R25 of the record, where state's attorney, Scott Brinkmeyer, speaks about. He says, Your Honor, on this point, we've had an additional disclosure. I'm now tethering another 250 pages of bank records in this case, the bank records that were the subject of the order. I know there's still a little bit more coming after having talked to some of the bank representatives, but not much more. That was on January 6, 2009, at the third hearing of this case. Then at the suppression hearing on page R64 of the record, which was on May 12, 2009, the court asked state's attorney Brinkmeyer, so this information was provided after the charges were filed. Is that what you're saying? State's attorney Brinkmeyer replies, it was, yes. Your Honors, the bank records that were turned over were part of a continuing investigation into the defendant's activities. That fact, while not overly well supported in the record, does exist nonetheless in the record at pages R25 and R64. More importantly, if we look to the cases surrounding, that have been cited in all the briefs, whether it's A.G. Edwards, Jackson, Will County, Ranjeri, Dallaire, and even Miller, we can all distinguish them on the basis that subpoenas were issued in every single one of those cases, and that in none of those cases, the Illinois Banking Act was in consideration. In none of those cases, the Illinois Banking Act was held to control the disposition of the trial court. In this particular case, however, the trial court applied the First District's decision in Jackson, and so I ask this court to consider an alternate possibility, the practical effect of whether or not this court were to adopt Jackson. Even if this honorable court were to adopt Jackson, the holding in Jackson itself, which may rest on questionable premises, which may not necessarily be in keeping with the lockstep doctrine, still holds true to Justice Brennan's dissent in United States v. Miller. In United States v. Miller, Justice Brennan uses California Supreme Court Justice Samuel Mosk's decision in Burroughs v. Superior Court and quotes it at length in about four pages. In that decision, that's where Jackson gets its statement that, for all practical purposes, disclosures by individuals or business firms of their financial affairs to a bank are not entirely volitional since it is impossible to participate in the economic life of contemporary society without maintaining a bank account. The suggestion there, I guess, being that we either have to live like Ted Kaczynski or participate in society like normal people. But even if that premise is considered sound, I ask this honorable court to consider what Justice Brennan also cites from Justice Mosk's opinion, that all of this, all of the considerations underlying a depositor's privacy rights in a bank account, are based on the premise that the bank has to be a neutral party in an investigation. When an individual depositor's privacy rights are at issue, the bank must be neutral. But, as Justice Brennan, quoting Justice Mosk, states, however, if the bank is not neutral, as, for example, where it is itself a victim of the defendant's suspected wrongdoing, the depositor's right of privacy will not prevail. When Jackson adopted Justice Brennan's minority, and it adopted the Burroughs v. Superior Court California decision, it implicitly adopted the holding that when the bank is the victim of a crime, it endangers the rights of all depositors. As such, even if this honorable court were to adopt Jackson, consider all of its premises sound, consider it to be in keeping with the limited lockstep doctrine adopted in Cabales, then this honorable court still must find that the defendant, through her actions, gave the bank, and the police actions, gave the bank a reasonable belief that it had been the victim of theft and fraud. If this honorable court wants to call it the employee depositor embezzler exception, or whatever terminology it seeks to apply, there must still be room for the fact, as recognized by the Illinois Banking Act, as recognized in Justice Brennan's dissent, as recognized in Burroughs v. Superior Court, and adopted in United States v. Miller, that when the bank has been the victim of a crime, we as a society, those of us who deposit our money in banks, those of us who rely on banks in the keeping of our financial system, are all placed at risk when employees abuse the trust, the fiduciary duty that is placed in them. The defendant in this case abused that trust. She can't now invoke privacy, the privacy that she abused, the privacy rights that we all rely on, to protect herself. There will be no ground shift in Illinois law, regardless of how this court decides this case. It will only be the question of whether or not the aggrieved can seek justice. If the state's attorney is there to protect the people of his or her jurisdiction, then why didn't he secure a subpoena to protect the rights of the people in his or her jurisdiction? As Your Honor may well know, I mean, this state is, like many states, grappling with an inordinate number of financial issues that affect the funding of both county state's attorney's offices, county public defender offices, how counsel gets appointed. As well as if Mr. Brinkmeyer is a full-time state's attorney. I'm not suggesting that he isn't. Elected and he gets paid whether we get money or not. And I can speak personally for the fact that he is one of the most dedicated public officials I've ever had the pleasure of dealing with. Now, all that aside, Your Honor, oversights do get made. But the question is whether this particular oversight, or whatever you want to call it, whether that necessarily infringed on a constitutional right. And the answer quite clearly is, given the nature, the status of the parties, given the fact that the bank was a victim, given support from the Illinois Banking Act, its limited applicability to this present context, given the statements made in Jackson and the statements made by Justice Brennan and Justice Moss and the dissent in the United States v. Miller, people submit simply that there was no constitutional violation when a bank who's been a victim of fraud turns over an employee's account records. Thank you.